## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| LAJEAN PARKER, | |
| Plaintiff, | Civil Action No.: |
| v. | **Jury Trial Demanded** |
| OSSI, INC. d/b/a/ OFFICE SYSTEMS INSTALLATIONS. | |
| Defendant. | |

## COMPLAINT

Plaintiff Lajean Parker (hereinafter "Ms. Parker" or "Plaintiff") files this Complaint against the Defendant OSSI, Inc. which does business as Office Systems Installations (hereinafter "OSI" or "Defendant") showing the Court that Defendant discriminated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") as follows:

## INTRODUCTION

OSI is a predominately male company that took no actions to prevent sexual harassment of its female employees despite being on notice of recurring sexual harassment amongst its employees. OSI failed to supervise its employees, failed to

conduct any training, and failed to even maintain a written anti-sexual harassment policy/handbook.

Rather than promptly suspending or disciplining Ms. Parker's harasser, OSI engaged in a bizarre, lengthy, and coercive meeting with Plaintiff that compounded her emotional distress and evidenced the company's disregard for federally-protected civil rights. During the meeting, OSI scolded Plaintiff for reporting her sexual harassment: "I know I don't have to remind you that you are the one that started this. And you are putting a lot of people through a lot of stuff." OSI also threatened Plaintiff that, "If we fire Adis, we will have to fire you" because that's what's "fair." OSI engaged in victim blaming by telling Plaintiff that she was "just as" guilty as the sexual harasser because that Plaintiff did not report her harassment sooner.

During this meeting, OSI made it clear that the company would not enforce Plaintiff's Title VII rights when its human resources supervisor told Plaintiff that she believed that schools should not have been desegregated because two children that she went to school with faced challenges during desegregation. The human resources supervisor used her racist anecdote as a metaphor to coerce Plaintiff into dropping her claims of sex discrimination.

Relatedly, OSI maintained facially sexist policies that prohibited Plaintiff from equally participating in lucrative out-of-town jobs that were "boys only." OSI's human resources supervisor said that this policy was not sex discrimination but simply to "protect" Plaintiff because her participation in the out-of-town jobs would "not look good."  Instead of profiting as the male employees did from the lucrative out-of-town jobs, the Plaintiff was forced to stay home and earn no income.

## PARTIES

1.    Plaintiff Parker worked for OSI as an installer and lead installer from March 2018 to September 2019. At all times relevant to this action, Plaintiff Parker was a citizen of the State of Georgia who currently resides at 6 Collins Place, Cartersville, Georgia 30121.

2.    OSI is a company that provides contract office furniture installation.

3.    At all times relevant to this action, OSI was Ms. Parker's employer within the meaning of Title VII.

4.    OSI is located at and does business at 1100 Williams Drive, Suite 300, Marietta, Georgia 30066.

## JURISDICTION AND VENUE

5.    This Court's jurisdiction is proper pursuant to 28 U.S.C. § 1331 as the claims herein present a federal question.

6.      Venue is proper in this district and division under 28 U.S.C. § 1391 because Defendant conducts business in this district and division, and the unlawful actions and practices alleged herein were committed within the Northern District of Georgia.

7.      Defendant may be served with a summons and copy of the Complaint on its registered agent, Bradley Conlon, or by delivering it to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process.

8.      Ms. Parker complied with all conditions precedent to the filing of this action, including timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue, and this action has been filed within ninety (90) days of receipt of said Notice.

9.      On October 12, 2019, Plaintiff Parker filed EEOC Charge No. 410-2020-00669 against Defendant OSI. The EEOC issued a right to sue letter dated September 11, 2020 for this charge.

## FACTS

**A. Plaintiff's employment background**

10.      Defendant OSI hired Plaintiff Parker on or around March 13, 2018 as a crew installer.

4

11.     Due to her good performance, OSI awarded Plaintiff a most improved award and later promoted her to lead installer.

12.     Out of OSI's approximate eighty (80) employees, Ms. Parker was one of the two (2) female crew workers. And for the vast majority of the time that Plaintiff worked for OSI, Plaintiff was the only female working in the field.

13.     Ms. Parker performed her job satisfactorily, was told by OSI that she was doing a good job, and was seen by OSI as a good employee.

14.     OSI employed Adis Dodge as a supervisor with immediate authority over Ms. Parker. Supervisor Adis had authority to assign duties on the job, discipline Plaintiff, and issue write-ups. Plaintiff often worked with Supervisor Adis in the field at off-site locations.

**B. OSI's failure to maintain a policy to prevent sexual harassment**

15.     OSI was aware that sexual harassment was a problem amongst its employees, but did nothing to prevent or mitigate this problem.

16.     For example, OSI had received a letter from a government agency regarding an employee engaging in sexual harassment.

17.     The agency's letter to OSI was regarding this employee's second sexual harassment incident. The employee already had a written letter in his file.

18.    Despite its knowledge of repeated instances of sexual harassment, during Plaintiff's employment with OSI, OSI did not have a written policy prohibiting sexual harassment, provided its employee's no sexual harassment training, did not inform or explain any policy or reporting procedure on sexual harassment or sexual assault to Ms. Parker, did not have a manual containing any policies on sexual harassment, and did not train or supervise its employees to prohibit or avoid sexually harassing behavior.

## C. Plaintiff is subjected to sexual harassment and a hostile work environment during her employment at OSI

19.    Since the beginning of Plaintiff's employment at OSI in March 2018, Supervisor Adis made sexual comments to Plaintiff and OSI knew or should have known about these comments.  OSI did nothing to stop or prevent this behavior.

20.    In the summer of 2019, Supervisor Adis's sexual harassment of Plaintiff became more frequent (nearly every day), more explicit, and more aggressive. Defendant knew or should have known that Supervisor Adis was engaging in this behavior, but Defendant ignored same.

21.    The following is a non-exhaustive list of examples of Supervisor Adis's sexual harassment of Plaintiff in summer of 2019:

a.    Supervisor Adis referred to Plaintiff as "sugar tits."

b.      Supervisor Adis asked Plaintiff, "How much dick can a female take? How much dick do you think a female can take in too? How big is too big? Like how much?"

c.      Supervisor Adis said, "now I want you to take these screws and shove it up it up your ass."

d.      Supervisor Adis told Plaintiff, "I got some thick wood for you right here you can take."

e.      Supervisor Adis commonly discussed women being weaker and made statements such as, "Y'all don't do anything. Y'all just cook and give men sex."

f.      When unloading material that had been strapped to the truck, Supervisor Adis told Plaintiff, "let me strap you down too."

22.    These remarks were made to Plaintiff on the basis of her sex, and Supervisor Adis did not make these remarks or similar remarks to men.

23.    The sexual harassment at OSI permeated the job site and included other employees in addition to Supervisor Adis. For example, because of Supervisor Adis's pervasive (nearly daily) harassment, other co-workers began frequently harassing Plaintiff about Adis' affinity for her, saying things such as, "Adis is going to be the one to get you pregnant. There's going to be a little Adis."

24.     Relatedly, Supervisor Adis and other supervisors such as William and Richard on multiple occasions in the summer of 2019 had loud sexual discussions in close proximity to Plaintiff and intending for her to hear them. For example, these supervisors loudly discussed the correlation between penis size and race and that "black guys are not the only guys with big dicks."

25.     The conduct so altered Ms. Parker's work environment that it unreasonably interfered with her job performance. Because OSI did not have a complaint procedure, Plaintiff was unsure of how to respond and afraid for her job if she complained. She attempted on her own to be reassigned away from Supervisor Adis's jobs or simply called out of work. As a result, Plaintiff missed work and missed out on income.

## D. Plaintiff is subjected to sex discrimination in the form of unequal employment opportunities and unequal pay

26.     OSI had a policy/procedure that prohibited Plaintiff from travelling to lucrative out-of-town jobs because of her sex.

27.     As a result of this facially discriminatory policy, Plaintiff was prohibited from participating in the out-of-town jobs. These lucrative jobs often involved overtime or double-time pay. Because she was barred from participating, Plaintiff stayed at home without work or pay.

28.     In addition to failing to allow her to participate in out-of-town jobs because of her sex, OSI also inhibited Plaintiff's career advancement by denying her the ability to participate in job related training and certifications because of her sex. For example, in August 2019 OSI denied Plaintiff the ability to participate in Teknion training and certification due to her sex while offering other similarly situated males the ability to participate in this training, paid for by OSI. Many of the products offered by OSI are Teknion and OSI's refusal to allow Plaintiff to obtain this certification inhibited her ability to advance her career.

**E. OSI's willful disregard of Plaintiff's civil rights, following her report of sexual harassment**

29.     September 10, 2019, Ms. Parker filed a complaint with OSI's human resources supervisor, Ms. Ann Achenbach, regarding Supervisor Adis's sex harassment. Plaintiff informed OSI that Supervisor Adis's behavior was affecting her work and that she had called out of work because she did not want to be harassed further.  Plaintiff informed OSI of some of the specific statements that Supervisor Adis made to her such as, "how much can a girl take in at once" and "do I get any type of pleasure out of a dildo." Plaintiff also informed human resources that she did not feel safe around Supervisor Adis.

30.     On September 11, the human resources supervisor pressured and encouraged Plaintiff to withdraw her complaint by stating that "the eighty employees

that need a job with OSI are on your shoulders." The HR supervisor threatened

Plaintiff that litigation would "cost you money."   The HR supervisor told Plaintiff

that she was going to "protect the company" because she was sixty-six (66) years

old and she "cannot go out to get another job."

31.    At this meeting, OSI also acknowledged that no discipline or training

of Adis was likely to result from Plaintiff's complaints because Supervisor Adis

"was one of the few supervisors that OSI had left."

32.    True to its HR supervisor's word, the Defendant did not take any

prompt remedial action in response to Plaintiff's complaint. Supervisor Adis

remained on the job and no investigation was conducted.

33.    On September 18, 2019 Plaintiff Parker was retaliated/discriminated

against by being denied the ability to perform a job at the Porsche company location

due to her sex. Instead, OSI put a subordinate male employee in charge of the job

instead of Plaintiff, despite him having only six months of experience, compared to

Plaintiff's 18 months of experience. The male employee did not have knowledge

regarding the proper paperwork, did not know where the storage room was located,

and did not know to contact OSI before presenting the client with problems. Plaintiff

reported this discrimination to Defendant's human resources supervisor, but Plaintiff

was scolded and told she should have been "satisfied" with her role of "training" the junior male who had assumed Plaintiff's lead position.

34.    On September 20, 2019, Plaintiff had a three-hour meeting with OSI human resources. Early in the meeting, Plaintiff informed OSI that she had begun experiencing sleep loss, depression, had been unable to eat, and was not herself as a result of the harassment and discrimination she faced at OSI. She also informed OSI that she had recently been prescribed Seroquel. Despite being aware of Plaintiff's recent trauma and need for medical assistance, OSI threatened Plaintiff with termination, again pressured Plaintiff to retract her harassment and discrimination allegations by insinuating that the jobs and financial livelihood of OSI's eighty other employees depended on the same, blamed Plaintiff for the harassment, told Plaintiff she was just as guilty as Supervisor Adis, indicated that OSI believed Supervisor Adis had no idea that his comments were not appropriate in the work place, and again suggested that OSI would not take sufficient prompt remedial action to prohibit further harassment and discrimination.

35.    At this September 20 meeting, Plaintiff notified OSI that she objected to the options it presented for her return to work and that she was dissatisfied with how OSI had handled its review of her allegations.

36.    At the meeting, the HR supervisor made it clear that she did not respect federally protected civil rights and did not believe that they should be enforced. The HR supervisor explained that she was raised to believe that there should be racial segregation and that she has had to get used to the idea that we are all one people. The HR supervisor explained that she did not believe it important to protect personal rights under Title VII because she saw two children crying during school desegregation and she felt that it was "so wrong" to integrate schools. The HR supervisor explained to Plaintiff that seeing what she has seen for the past fifty years, she would not fight discrimination and by implication neither would OSI and neither should Plaintiff.

37.    On September 20, OSI discriminated and retaliated against Plaintiff by removing her from its work schedule.

38.    For at least all of the above reasons, Defendant constructively discharged Plaintiff as of September 21, 2019.

39.    Despite Plaintiff's reporting and constructive discharge, OSI continues to employ and publically congratulate Supervisor Adis, publicly making the below statements in its published corporate literature:

- "Adis and team installed AIS product with National Public Seating for a company in McDonough, GA. Awesome work guys!"

12

- "Edin, Adis, Robert, Lauro, and Brandon installed two Framery Phone Booths last week. Nice work guys!"

- "Adis and Nasar installed OFS product at a financial services company in Dublin, GA. Looks great!"

- "A team led by Jermarcus and Adis just finished up an almost two month installation for a well-known software company in Atlanta. Check out their fun, new work space!"

## COUNT I: SEXUAL HARASSMENT

40.   Plaintiff incorporates herein by reference the allegations set forth in the above paragraphs of this Complaint as if fully set forth herein.

41.   As a female, Plaintiff is a member of a protected class under Title VII.

42.   Defendant is an employer within the meaning of Title VII, which applies to all private, state and local government employers with more than fifteen employees.

43.   As described above, Ms. Parker was subject to Supervisor Adis's unwelcome severe and pervasive sexual assault and harassment, including his repeated and eventually daily verbal comments to her over the course of several months during her employment with OSI. Supervisor Adis engaged in the most severe sexual harassment, but sexual harassment permeated the workplace at OSI.

13

44.    The severe and pervasive sexual assault and harassment at OSI altered the terms and/or conditions of Ms. Parker's employment and created a discriminatorily hostile working environment where she did not feel safe.

45.    OSI is vicariously liable to Plaintiff Parker for the hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee.

46.    OSI did not exercise reasonable care to prevent the harassment. OSI did not have anti-harassment policy. There is no evidence that OSI monitored its off-site workplace locations, OSI was on notice of this issue from the harassment that occurred at the CDC location, failed to promptly respond to complaints, failed to provide a system for registering complaints, and its response to Plaintiff's complaint effectively discouraged complaints from being filed.

47.    Ms. Parker subjectively perceived the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment. Ms. Parker lost out on income and called out of work as a result of the sexual harassment. Plaintiff also sought medical attention as a result of the harassment.

48.    Ms. Parker's perception was reasonable because the environment at OSI was one that a reasonable person would find hostile or abusive. The sexual harassment frequently occurred on a daily basis. Further, the sexual harassment was

severe, sexually explicit, and humiliating. OSI's human resources supervisor commented that she learned a "whole new vocabulary" as a result of the investigation into Plaintiff's complaint. Another employee resigned his employment due to the sexually charged nature of the OSI work environment. Further, the CDC previously complained to OSI about sexual harassment by its employees.

49.    OSI provided Plaintiff with no reasonable corrective opportunities provided by OSI and OSI did not promptly act to correct the sexually harassing behavior. OSI did not discipline or suspend Supervisor Adis during the pending investigation but instead subjected Plaintiff to a coercive attempt to manipulate Plaintiff into disregarding OSI's violation of her Title VII rights.

50.    As a result of Defendant's sex discrimination described herein, Ms. Parker has suffered actual and compensatory damages, including but not limited to lost wages, mental and emotional distress, attorneys' fees, and punitive damages.

## COUNT II: SEX BASED DISCRIMINATION

51.    Plaintiff incorporates herein by reference the allegations set forth in the above paragraphs of this Complaint as if fully set forth herein.

52.    As a female, Plaintiff is a member of a protected class under Title VII.

53.    Defendant is an employer within the meaning of Title VII, which applies to all private, state and local government employers with more than fifteen

15

employees.

54.     Defendant engaged in discrimination based on sex in the terms and conditions of Ms. Parker's employment in violation of Title VII of the Civil Rights Act of 1964, including but not limited to depriving Plaintiff of income opportunities through out-of-town trips, training certifications, and acting in the lead role at job sites as well as removing Plaintiff from the schedule because of her sex.

55.     But for Plaintiff's sex, Plaintiff would not have been denied the above described employment opportunities. The U.S. Supreme Court's 2020 *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731 (2020) clarified Title VII's causation standard. "Often, events have multiple but-for causes…So long as the plaintiff's sex was one but-for cause of that decision, that is enough to trigger the law." *Id*. at 1739. Plaintiff satisfies causation even if "[s]ex wasn't the only factor, or maybe even the main factor, but it was one but-for cause—and that was enough." *Id.* at 1745.

56.     Defendant knew that federal law prohibits discrimination, and willfully and/or recklessly disregarded Plaintiff's federally-protected rights in its termination of Plaintiff. Defendant intentionally attempted to coerce Plaintiff into accepting OSI's Title VII discrimination.

57.     Due to Defendant's unlawful actions, Plaintiff was injured and is therefore entitled to punitive and compensatory damages, back pay, prejudgment

interest, reinstatement or front pay, attorneys' fees, costs, and further relief in an amount to be determined at trial.

## COUNT III: NEGLIGENT RETENTION, TRAINING AND SUPERVISION

58.    Plaintiff incorporates herein by reference the allegations set forth in the paragraphs above of this Complaint as if fully set forth herein.

59.    Supervisor Adis was an employee and agent of Defendant during the timeframe relevant to this lawsuit acting within the course and scope of his employment and agency.

60.    As a result of Supervisor Adis's position, Defendant provided him with supervisory authority over Plaintiff. Plaintiff worked in off-site jobs installing office furniture and was vulnerable to Supervisor Adis at these job sites.

61.    Defendant has a duty to exercise ordinary care in the supervision, training, and retention of its managers that it knows or should have known pose a risk of harm to others where it is reasonably foreseeable that the employee's tendencies or propensities could cause harm.

62.    In the exercise of reasonable care, Defendant knew or should have known that its employees and supervisors had reputations for sexual harassment of employees, but Defendant complacently engaged in negligent (i.e., none) supervision, training and negligently retained these supervisors.

63.     Defendant breached its duty when it failed to take any steps to train to prevent sexual harassment after being placed on notice of its employees alleged predatory sexual practices from the CDC's notice letter.

64.     Defendant was negligent in allowing its employees to remain in a supervisory position after being put on notice of predatory sexual practices and failing to reasonably train and supervise.

65.     Because Defendant failed to act on its knowledge and exercise its duty of ordinary care, Supervisor Adis committed multiple intentional torts to Plaintiff including assault.

66.     As a direct result of this breach, Plaintiff suffered damages in an amount to be determined at trial.

67.     Punitive damages should be awarded in this case because the Defendant's actions show "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1 (b).

68.     An award of attorneys' fees and expenses is appropriate in this case because Defendant has "acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense…" O.C.G.A. § 13-6-11. Defendant's failure to take remedial action or engage in any sexual harassment

training after it was on notice from the CDC satisfy one or more of the statutory criteria for attorneys' fees and expenses.

69.    Plaintiff is entitled to attorneys' fees and litigation expenses in an amount to be determined at trial.

## **PRAYERS FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court grant the following relief:

1) Issue judgment in favor of Plaintiff Parker and against Defendant OSI;

2) Issue judgment in favor of Plaintiff that Defendant discriminated against Ms. Parker on the basis of her sex in violation of Title VII;

3) Issue judgment in favor of Plaintiff that Defendant negligently supervised and retained Mr. Adis;

4) That Plaintiff have and recover compensatory damages for the mental and emotional distress occasioned by Defendant's discriminatory conduct, and negligent supervision and retention in an amount to be determined by a jury;

5) That Plaintiff be awarded back pay, benefits, prejudgment interest, and front pay to which Plaintiff would have been entitled but for Defendant's discriminatory conduct and negligence;

6) That Plaintiff have and recover punitive damages in an amount to be determined by a jury;

7) That Plaintiff have and recover her attorneys' fees and costs of litigation pursuant to 42 U.S.C. § 2000e-5 and all other applicable laws; and

8) Any and other such further relief that this Court or the Finder of Fact deems equitable and just.

**Jury Trial Demanded**

This 22nd day of October, 2020.

Respectfully submitted,

HILL, KERTSCHER & WHARTON, LLP

By:    /s/ Douglas R. Kertscher
         Douglas R. Kertscher
         Georgia State Bar No. 416265
         Julie Burke
         Georgia State Bar No. 448095
         *Attorneys for Plaintiff*

3350 Riverwood Parkway
Suite 800
Atlanta, Georgia 30339
Telephone: 770-953-0995
Facsimile: 770-953-1358
E-mail: drk@hkw-law.com